UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LATORA DIXON,                          )   No. 07-2122 SC
                                       )
        Plaintiff,                     )
                                       )   ORDER DENYING
     v.                                )   PLAINTIFF'S MOTION
                                       )   FOR SUMMARY JUDGMENT
MICHAEL J. ASTRUE, Commissioner of )   AND GRANTING
Social Security Administration,        )   DEFENDANT'S MOTION
                                       )   FOR SUMMARY JUDGMENT
        Defendant.                     )
                                       )
_____)

## I.   INTRODUCTION

This matter is before the Court on cross-motions for summary judgment filed by the plaintiff Latora Dixon ("Plaintiff" or "Claimant") and the defendant Michael J. Astrue ("Defendant"). Docket Nos. 7, 11.  Plaintiff submitted a Reply.  Docket No. 12. Plaintiff seeks review and reversal of the Social Security Commissioner's final decision denying her claim for Supplemental Security Income benefits.  For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

## II.  BACKGROUND

### A.   Procedural Background

Plaintiff first filed an application for SSI benefits on March 19, 2003, claiming disability with an onset date of March 8, 1998.  Administrative Record ("AR") at 114.  That application was

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  initially denied, and the denial was upheld on rehearing and on

2  review by the Appeals Council.  Id. at 32-35, 40-43, 60-61.

3  Claimant filed a second application for SSI benefits on June

4  21, 2004, which was denied.  See id. at 63-67, 71-75, 118-121.

5  Claimant then requested a hearing.  The hearing was held before

6  the Administrative Law Judge ("ALJ") on July 11, 2005.  Id. at 17.

7  Claimant testified in person at the hearing, as did a vocational

8  expert.  Id.  Claimant was represented by counsel at the hearing.

9  The ALJ concluded that Claimant is not disabled within the

10  meaning of the Social Security Act, and is therefore not eligible

11  to receive SSI benefits.  See id. at 14-25.  The Appeals Council

12  denied Claimant's subsequent request for review.  Claimant then

13  brought this suit seeking judicial review of that final adverse

14  determination.  See Compl., Docket No. 1.

15     **B.    Factual Background**

16  Plaintiff was born in May 1983, and is now 25 years old.  AR

17  at 18, 114.  She has no work experience and a fifth grade

18  education.  Id. at 18, 127-131, 135-36.  As a basis for her

19  application for benefits, Plaintiff claims she has a learning

20  disability and cannot read or write well, making it impossible for

21  her to perform any job duties.  See id. at 132-33.

22  Claimant underwent multiple psychological and neurological

23  examinations, the findings from which were in the record before

24  the ALJ.  The first evaluation was conducted by Dr. Sokley Khoi,

25  Ph.D., in June 2003.  Id. at 19, 217-20.  Dr. Khoi administered

26  several tests, including the Wechsler Adult Intelligence Scale-III

27  (WAIS-III), Wechsler Memory Scale-III (WMS-3), Bender-Gestalt

28

United States District Court
For the Northern District of California

1    Test, and the Rey 15-Item Memory Test-II.  Id. at 217.  Dr. Khoi

2    concluded that the WAIS-III and Bender-Gestalt Test results were

3    invalid because the Claimant appeared to be malingering:

4              The claimant was noted to engage in many
               behaviors suggestive of malingering.  She made
5              bizarre, careless, and sloppy drawings on the
               Bender-Gestalt Test, thus this task was
6              discontinued.  The claimant was noted to miss
               obviously correct answers.  For example, when
7              asked to count to ten, the claimant stated,
               "One, two, four, five, seven, eight, ten."
8              However, please note that the claimant was
               able to correctly identify the numbers on the
9              Digit Symbol-Coding subtest of the WAIS-III.
               When asked what is the day that comes after
10             Saturday, the claimant stated, "Tuesday."
               When asked what is the shape of a ball, the
11             claimant stated, "Square."  Due to the
               claimant's poor effort, the following test
12             results are considered invalid.

13   Id. at 218.  Dr. Khoi reached the same conclusion with respect to

14   the Rey 15-Item Memory Test-II:

15             Clinical observation and the claimant's
               pattern of performance on the tests
16             administered suggested inadequate motivation
               and effort.  Therefore, today's test results
17             are considered invalid.  The claimant's
               performance on the Rey 15-Item Memory Test-II
18             was consistent with malingering.  Based on
               clinical presentation, the claimant appears to
19             be functioning within the high borderline to
               low average range of intellectual ability.  Of
20             note, the claimant may have cognitive problems
               due to limited educational history, but due to
21             her blatant malingering it is difficult to
               accurately ascertain her cognitive
22             functioning.

23   Id. at 219.

24       In November 2003, Dr. Thomas Hardey, Ph.D., evaluated

25   Claimant and performed a similar battery of tests, adding the

26   Benton Visual Retention Test and Trail Making Test.  Id. at 20,

27   226-29.  Dr. Hardey reached similar conclusions to Dr. Khoi,

28
                                    3

United States District Court

For the Northern District of California

1  finding that none of the test results were valid because Claimant

2  was malingering during every exam.  See id. at 228.

3          Results of this evaluation raised questions
           regarding this applicant's credibility.

4          Clinical observation indicated that this
           applicant has no functional limitations in

5          daily activities, social functioning, or
           difficulties with concentration, persistence,

6          or pace.  There are no episodes of emotional
           deterioration in work-like situations.  She

7          was observed to have average ability to
           understand, carry out, and remember simple and

8          complex instructions.  She is capable of
           responding appropriately to coworkers,

9          supervisors, and the public.  She can respond
           appropriately to usual work situations

10         including attendance and safety issues, and is
           able to deal with changes in a routine work

11         setting.  There were no limitations evident
           due to any emotional impairment.  This

12         individual is not considered capable of
           handling funds in her own best interest, given

13         her poor cooperation with this CE.

14  Id. at 229.

15      Finally, Dr. Laura Catlin, Psy.D., evaluated claimant in

16  October 2004.  Id. at 240-246.  Dr. Catlin performed the WAIS-III,

17  the Wide Range Achievement Test-3 (WRAT-III), the Rey 15 - Memory

18  Test for Malingering, and the Brief Symptom Inventory (BSI).  Id.

19  at 240.  Unlike Dr. Khoi and Dr. Hardey, Dr. Catlin did not

20  include in her report Claimant's actual performance on the Rey 15

21  Memory Test, but did indicate that Claimant "was negative for

22  malingering."  Id. at 243.  Because Dr. Catlin found no indication

23  of malingering, she was able to produce valid test results.  Dr.

24  Catlin found that Claimant's Verbal IQ to be 63, her Performance

25  IQ to be 62, and her Full-Scale IQ to be 59, placing claimant in

26  the extremely low to borderline range of intellectual functioning.

27  Id. at 242.  According to Dr. Catlin, claimant's WAIS-III and

28
                                    4

**United States District Court**
For the Northern District of California

1   WRAT-III results "indicate a learning disability in Reading,

2   Spelling, and Math."  Id. at 243.  Dr. Catlin summarized her

3   findings as follows:

4           Ms. Dixon seems to exhibit a profound learning
            disability and cannot read or write.  She only
5           completed school until the sixth grade because
            of her inability to do the work.  Ms. Dixon
6           struggled greatly on all the tests measures
            and scored far below average on all the
7           subtests.  Her difficulties in school are most
            likely the combination of a learning
8           disability, a low I.Q., an inadequate and
            incomplete education, and mental health
9           difficulties.

10  Id. at 244.  Based on the examination, Dr. Catlin diagnosed

11  Claimant with learning disorders and with a major depressive

12  disorder.  Id. at 243.

13

14  **III.  LEGAL STANDARD**

15       To qualify for disability benefits, a claimant must show that

16  he or she is unable "to engage in any substantial gainful activity

17  by reason of any medically determinable physical or mental

18  impairment which can be expected to result in death or which has

19  lasted or can be expected to last for a continuous period of not

20  less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A).  In

21  making this determination, "an ALJ conducts a five step inquiry."

22  Lewis v. Apfel, 236 F.3d 503, 508 (9th Cir. 2001) (citing 20

23  C.F.R. §§ 404.1520 & 416.920).

24          The ALJ first considers whether the claimant
            is engaged in substantial gainful activity; if
25          not, the ALJ asks in the second step whether
            the claimant has a severe impairment (i.e.,
26          one that significantly affects his or her
            ability to function); if so, the ALJ asks in
27          the third step whether the claimant's

28                                5

**United States District Court**
For the Northern District of California

1                  condition meets or equals one of those

                outlined in the Listing of Impairments in

2                  Appendix 1 of the Regulations [20 C.F.R. §§

                404.1520(d) & 416.920(d)]; if not, then in the

3                  fourth step the ALJ asks whether the claimant

                can perform in his or her past relevant work;

4                  if not, finally, the ALJ in the fifth step

                asks whether the claimant can perform other

5                  jobs that exist in substantial numbers in the

                national economy.  20 C.F.R. §§ 404.1520(b)-

6                  404.1520(f)(1) & 416.920(b)-416.920(f)(1).

7  Id.

8       Courts may set aside a decision of the ALJ if it is not

9  supported by substantial evidence.  42 U.S.C. § 405(g); Holohan v.

10  Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001).  "Substantial

11  evidence" is the relevant evidence which a reasonable person might

12  accept as adequate to support the ALJ's conclusion.  Reddick v.

13  Chater, 157 F.3d 715, 720 (9th Cir. 1998).  In order to be

14  "substantial," the evidence must amount to "more than a

15  scintilla," but need not rise to the level of a preponderance.

16  Holohan, 246 F.3d at 1201.  Where the evidence could reasonably

17  support either affirming or reversing the ALJ's decision, a court

18  may not substitute its judgment for the ALJ's decision.  Id.

19

20  **IV.  DISCUSSION**

21       Claimant raises numerous challenges to the ALJ's ruling.

22  First, Claimant asserts that the ALJ improperly rejected Dr.

23  Catlin's conclusions.  Second, Claimant asserts that the ALJ's

24  failure to seek the assistance of a medical advisor was a

25  violation of Due Process.  Third, Claimant asserts that the ALJ's

26  unfavorable decision is not supported by substantial evidence.

27  Fourth, Claimant asserts that she is entitled to a finding of

28

**United States District Court**
For the Northern District of California

1   disability as a matter of law.  Finally, Claimant asserts that the

2   ALJ committed legal error by departing from the guidelines in the

3   Dictionary of Occupational titles without adequate justification.

4   The Court addresses each in turn.

5       **A.   The Record Provides Specific And Legitimate Reasons For**

6            **Rejecting Dr. Catlin's Opinion**

7       Claimant argues that Dr. Catlin's report contained the only

8   valid test results and that the ALJ had no legitimate basis for

9   rejecting Dr. Catlin's conclusions based on those results.

10  Claimant bases this assertion on the notion that Dr. Catlin's

11  opinion is uncontradicted in the record.  "[T]he Commissioner must

12  provide clear and convincing reasons for rejecting the

13  uncontradicted opinion of an examining physician."  Lester v.

14  Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as Amended Apr. 19,

15  1996).  However, where the examining physician's opinion has been

16  contradicted, the ALJ may reject that opinion for "specific and

17  legitimate reasons that are supported by substantial evidence in

18  the record."  Id. at 830-31.

19      Claimant's position is flawed in two ways.  First, the

20  premise that Dr. Catlin's opinion is uncontradicted is wrong.

21  While Dr. Khoi and Dr. Hardey concluded that the results of the

22  I.Q. tests they conducted were invalid due to Claimant's

23  malingering, they still reached conclusions about Claimant's

24  behavior and mental capacity based on their interaction with her

25  during clinical examinations.  Dr. Khoi concluded that, "Based on

26  clinical presentation, the claimant appears to be functioning

27  within the high borderline to low average range of intellectual

28                          7

**United States District Court**
For the Northern District of California

1   ability."  AR at 219.  He also noted that Claimant suffered no

2   impairment to a number of abilities relevant to adequate

3   functioning in the workplace, such as following simple

4   instructions, performing repetitive tasks requiring only one or

5   two steps, and interacting appropriately with coworkers and

6   supervisors.  <u>Id.</u> at 219-220.  Similarly, Dr. Hardey found that

7   Claimant's "ability to reason or to make occupational or personal

8   judgments was not impaired."  <u>Id.</u> at 226.  Dr. Hardey also noted

9   that Claimant's "[i]nsight and judgment appeared to be in the

10  normal range" and that her "[f]unctional levels of intellectual

11  and memory ability were in the average range."  <u>Id.</u>  As noted

12  above, Dr. Hardey questioned Claimant's credibility, but not her

13  ability to "understand, carry out, and remember simple and complex

14  instructions."  <u>Id.</u> at 229.  While Dr. Catlin's test results may

15  have been the only such results available, it cannot be said that

16  her ultimate conclusions about Claimant's ability to work were

17  uncontradicted.

18       The second flaw in Claimant's challenge is that it ignores a

19  portion of the ALJ's reasoning.  In her brief, Claimant asserts

20  that the ALJ identified only three reasons for rejecting Dr.

21  Catlin's opinion:  1) the lack of detail regarding malingering; 2)

22  that Dr. Catlin has not reviewed the Social Security reports

23  regarding Claimant; and 3) that Dr. Catlin reached her diagnosis

24  of depression based only on the one interview.  Mot. at 11.  This

25  understates the ALJ's consideration of Dr. Catlin's opinion.  The

26  ALJ found that Dr. Catlin's test results were suspect in light of

27  Dr. Khoi's and Dr. Hardey's findings and that, even if valid, the

28

**United States District Court**
For the Northern District of California

1  test results did not support Dr. Catlin's diagnosis.  AR at 21-22.

2  The ALJ also considered other evidence in the record, such as

3  Claimant never seeking treatment for her purported depression and

4  her independence from others in taking care of her personal needs.

5  <u>Id.</u> at 22.  The ALJ also considered his own evaluation of

6  Claimant's credibility when she testified at the hearing.  <u>Id.</u> ("I

7  am not persuaded by the claimant's statements regarding her

8  limitations.  She has provided inconsistent statements to various

9  providers.").  During the hearing, the ALJ stated that he could

10  not properly evaluate Dr. Catlin's conclusions without the

11  underlying data, and Claimant's counsel essentially conceded the

12  point.  <u>See</u> <u>id.</u> at 301-02.

13      Dr. Catlin's diagnosis was contradicted by the conclusions of

14  the other physicians who examined Claimant.  As such, the ALJ need

15  only provide "specific and legitimate reasons," supported by the

16  record, for rejecting her opinion.  The Court finds that the ALJ

17  satisfied this requirement, so the rejection of Dr. Catlin's

18  opinion was proper.

19      **B.    <u>The Failure To Seek A Medical Advisor Is Immaterial</u>**

20      Claimant next argues that the ALJ violated Social Security

21  Ruling 96-6p by refusing to consult with a medical advisor.  <u>See</u>

22  Mot. at 16-17.  When resolving the conflicts between Dr. Catlin's

23  opinion and those of Dr. Khoi and Dr. Hardey, Claimant's attorney

24  suggested that the ALJ might benefit from having an additional

25  expert testify to offer background information about the various

26  tests the examining physicians performed.  <u>See</u> AR at 296.  The ALJ

27  found that unnecessary.  <u>Id.</u> at 296-97.  Counsel then suggested

28

United States District Court

For the Northern District of California

1   that results from a fourth exam, which were now missing, might be

2   relevant.  Id.  The ALJ said he could not consider that report

3   because it was not before him.  Id. at 19 n.1, 300.

4        Claimant's reliance on SSR 96-6p is misplaced.  That Ruling

5   clarifies the circumstances under which the ALJ must seek an

6   updated medical opinion.  One condition requiring an updated

7   report is "[w]hen additional medical evidence is received that in

8   the opinion of the administrative law judge or the Appeals Council

9   may change the State agency medical or psychological consultant's

10  finding that the impairment(s) is not equivalent in severity to

11  any impairment in the Listing of Impairments."  SSR 96-6p.

12  Nothing in the record suggests that the ALJ here was of the

13  opinion that new medical evidence would change any of the

14  consulting examiners' conclusions.  As such, the obligation to

15  seek an updated opinion under this Ruling was never triggered.  To

16  the contrary, the ALJ found no need to consult with an additional

17  expert, and was able to interpret Dr. Khoi's and Dr. Hardey's

18  conclusions without assistance.  Id. at 297.  Claimant also cites

19  Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003), in which the

20  circuit court held that the ALJ had improperly rejected an

21  examining physician's report.  In that case, however, there "was

22  no expert opinion of a psychologist or medical person to

23  contradict" the examining physician's report.  Id.  As discussed

24  above, the ALJ here had two expert reports from examining

25  physicians contradicting Dr. Catlin's report, so Markle is

26  inapplicable.

27  ///

28                                      10

**United States District Court**
For the Northern District of California

1          **C.    The Unfavorable Decision Was Supported By Substantial**

2                 **Evidence**

3          Claimant also asserts that the ALJ's conclusion was not

4   adequately supported by the record, and that Claimant is legally

5   entitled to a finding of disability pursuant to Listing 12.05(B).

6   See Mot. at 15-16, 18.  Both of these positions rely on the notion

7   that the ALJ improperly rejected Dr. Catlin's report and relied on

8   his own judgment without support.  As discussed above, supra

9   section IV.A, the ALJ properly discounted Dr. Catlin's conclusions

10  based on the record before him, including the reports of Dr. Khoi

11  and Dr. Hardey which contradicted Dr. Catlin's opinion.

12         Claimant is correct that, where the evidence shows she meets

13  the requirements of Listing 12.05, her claim must be granted.

14  This is elementary at most, however, since comparison between the

15  Claimant's alleged impairments and the Listing is one part of the

16  ALJ's five-part inquiry.  See Lewis, 236 F.3d at 508; AR at 18

17  (citing 20 C.F.R. § 416.920(a)).  The evidence here does not show

18  that she meets Listing 12.05.  Contrary to Claimant's assertion,

19  the record is replete with evidence a reasonable person might find

20  adequate to support the ALJ's ruling that Claimant did not meet

21  the requirements of the Listing.  See Reddick, 157 F.3d at 720.

22         Claimant also argues that the Court should consider a follow-

23  up report prepared by Dr. Catlin after the ALJ's decision.

24  See Mot. at 12-13; Reply at 4-6.  The second report was apparently

25  intended to address the ALJ's concerns and reasons for rejecting

26  her original opinion.  The additional evidence includes raw data

27  from the tests Dr. Catlin performed, including the Rey 15 - Memory

28                                     11

**United States District Court**
For the Northern District of California

1    Test for Malingering, as well as other details of her original

2    examination of Claimant and a subsequent reevaluation.  See AR at

3    288-89.  The parties dispute whether or not the Court should

4    consider this evidence.[1]  The Court need not reach that question,

5    however, as the supplemental report would not change the outcome.

6    At most, the supplemental report strengthens Claimant's position.

7    It does nothing to diminish the substantial evidence in the record

8    supporting the ALJ's decision.  The two expert opinions

9    contradicting Dr. Catlin's report remain on the record, as do the

10   ALJ's credibility determinations and various other evidentiary

11   failings in Claimant's case.  On such a record, the Court cannot

12   reverse the ALJ's decision.  See Holohan, 246 F.3d at 1202.

13          **D.   The Vocational Expert's Testimony Did Not Conflict With**

14               **the Dictionary of Occupational Titles**

15       Claimant's remaining argument is that the ALJ committed error

16   by not inquiring about reasons for the inconsistencies between the

17   vocational expert's ("VE") testimony and the Dictionary of

18   Occupational Titles ("DOT").  See Mot. at 6-9.  "When there is an

19   apparent unresolved conflict between VE or VS [vocational

20   specialist] evidence and the DOT, the adjudicator must elicit a

21   reasonable explanation for the conflict before relying on the VE

22   or VS evidence to support a determination or decision about

23   _____

24   [1]Defendant argues that under 42 U.S.C. § 405(g), Claimant must
     show that the evidence is material and that Claimant had good cause
     for failing to present the evidence earlier.  Claimant argues that
25   the evidence was offered to the Appeals Council, which should have
     reviewed it under 20 C.F.R. §404.970(b) because it "relates to the
26   period on or before the date of the administrative law judge
     hearing decision," and that judicial review encompasses the
27   complete record before the Appeals Council.

28                                  12

United States District Court

For the Northern District of California

1    whether the claimant is disabled."  SSR 00-4p.  In such a

2    situation, the ALJ has an affirmative obligation to inquire about

3    the inconsistency on the record.  See id.; see also Massachi v.

4    Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (ALJ may not "rely on

5    a vocational expert's testimony regarding the requirements of a

6    particular job without first inquiring whether the testimony

7    conflicts with the [DOT]").

8         Claimant argues that the VE's testimony here conflicted with

9    the DOT and that the ALJ expressly refused to inquire about this

10   issue on the record.  Claimant is wrong on both counts.  First,

11   the VE's testimony did not conflict with the DOT.  Upon questions

12   from both Claimant's counsel and the ALJ, the VE stated that his

13   opinion about certain jobs was different from the DOT, but not

14   inconsistent with it.  See AR at 341-43.  The VE identified two

15   jobs that he thought Claimant would be able to perform, both of

16   which have a Language Development skill level of 1 in the DOT.

17   Id. at 334-39.  The "reading" aspect of Language Development level

18   1 in the DOT is described as follows:  "Recognize the meaning of

19   2,500 (two- or three-syllable) words.  Read a rate of 95-120 words

20   per minute.  Compare similarities and differences between words

21   and between series of numbers."  Clark Decl., Docket No. 8, Ex. 1.

22   It is not disputed that Claimant is illiterate and does not meet

23   this standard.  However, the DOT is not necessarily an absolute

24   description of the requirements for a particular job:

25             The DOT lists maximum requirements of
               occupations as generally performed, not the
26             range of requirements of a particular job as
               it is performed in specific settings. A VE,
27             VS, or other reliable source of occupational

28
                              13

**United States District Court**
For the Northern District of California

1                              information may be able to provide more
                          specific information about jobs or occupations

2                              than the DOT.

3    SSR 00-4p.   Thus, the VE may conclude that Claimant, or someone

4    with her skills, could perform a specific job, even if the

5    description of that job in the DOT requires a higher level for

6    Language Development.   Such differentiation is contemplated in the

7    Ruling and would not amount to an unresolved conflict.   Here, the

8    VE acknowledged that Claimant was illiterate, but said that her

9    reading abilities were immaterial to the jobs in question.   <u>See</u> AR

10   at 334-35, 338, 341.   Given that the VE was providing the exact

11   sort of "more specific information" about the jobs in question,

12   there was no conflict that required resolution on the record, so

13   the ALJ did not err.

14       Even if the VE's testimony amounted to a conflict, however,

15   the Court would still reject Claimant's position.   Both Claimant's

16   counsel and the ALJ questioned the VE about his opinion and about

17   the DOT.   <u>See</u> <u>generally</u> <u>id.</u> at 334-348.   The VE explicitly

18   acknowledged the definition of Language Development 1,

19   acknowledged that the jobs in question were listed in the DOT as

20   requiring Language Development 1, and conceded that Claimant did

21   not meet that requirement, but stated that he thought Claimant

22   could still perform those jobs.   To the extent there is a conflict

23   between the VE's testimony and the DOT, that conflict is

24   adequately explained in the record.   The Court agrees with

25   Defendant that, if there was in fact a violation of SSR 00-4p, it

26   was a harmless error at most.

27   ///

28

                                        14

**V.    CONCLUSION**

The Court finds that the ALJ's decision in this matter was supported by substantial evidence.  For that reason, the Court DENIES Claimant's Motion for Summary Judgment and GRANTS Defendant's Cross-Motion for Summary Judgment.

IT IS SO ORDERED.

September 22, 2008

_____

UNITED STATES DISTRICT JUDGE

15